RONALD W. SNODDY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Snoddy v. Commissioner
Docket No. 12008-90
United States Tax Court
T.C. Memo 1991-251; 1991 Tax Ct. Memo LEXIS 294; 61 T.C.M. (CCH) 2811; T.C.M. (RIA) 91251; June 5, 1991, Filed *294 Decision will be entered for the respondent. Robert M. Musselman, for the petitioner. William L. Ringuette, for the respondent. KORNER, Judge. KORNER
MEMORANDUM OPINION For the years 1986 and 1987, respondent determined deficiencies of income tax against petitioner in the respective amounts of $ 7,686 and $ 5,924. The only issue we must decide is whether in those years petitioner was engaged in the enterprise of stock car racing with the actual and honest objective of making a profit, so as to entitle him to deduct from his income the net losses incurred from the enterprise in each year. At the time of filing the petition herein, petitioner was a resident of Virginia. During the years 1985 to 1989, petitioner's principal employment was as the manager of several retail stores for Fisher Auto Parts Company in the area of Madison and Ruckersville, Virginia. His salary ranged from about $ 40,000 a year to about $ 57,000 a year. Petitioner became interested in car racing in the early 1970's after he graduated from high school. In those years and until the early 1980's, he did some automobile racing on dirt tracks, but he claimed no deductible business expenses with *295 respect to these activities. In 1985, however, petitioner acquired a race car suitable for racing on asphalt race tracks. After spending several months finishing and preparing the car for race activity, with the assistance of some helpers, he began to enter the car in races in various tracks in Virginia, and continued this practice until 1989, when he acquired another job, stopped racing, and disposed of the race car. For the years 1985 through 1988, petitioner reported for tax purposes a net loss from his race car operations for each year. During the above period and particularly in the years 1986 and 1987, the years before the Court, petitioner had a driver for his race car, and his regular crew (to service, transport, and repair the vehicle) consisted of about four people, with the occasional assistance of several others. During the racing season in Virginia, which was generally from mid-April to the end of September, petitioner and his crew of helpers would work on the automobile on week nights, Saturdays, and sometimes Sundays to prepare the car for upcoming races, to transport it to the track (such places as Manassas, South Boston, and Martinsville, Virginia), and service *296 the car in the "pit" while at the race. Petitioner's crew of helpers was all volunteer; none was paid, although petitioner would defray some of their expenses for meals and the like while they were at a race track. Petitioner kept no formal records of his racing activity. He had only one bank account, in which he deposited all his earnings from racing and other sources and from which he paid most of the expenses associated with racing. Income from the car racing activity was from three sources: a) Purses for being a winner or a high placer in individual races; (b) prize money awarded at the end of the racing season to participating cars based upon the point score which they had achieved in racing over the preceding season at the particular track; and (c) income derived from sponsors, such as commercial organizations which would pay to receive advertizing on the sides of the racing vehicles. Petitioner won no first prizes in 1986 or 1987; he did derive some money from high placement in certain races, and he derived some further income from the point score awards at the end of the season. He was successful in securing only one major sponsor and one minor sponsor in the years in *297 question. In 1987 and 1988, the Massanutten Ski Resort acted as sponsor for petitioner's race car, principally paying for tires for the racing vehicle. Petitioner reported gross business income from car racing of $ 1,400 for 1986 and $ 2,165 for 1987. In turn, he claimed expenses in those years (including depreciation) of $ 31,697.12 and $ 26,519.20, respectively, for a net loss of $ 30,297.12 and $ 24,354.20 for the years 1986 and 1987. Upon examination, respondent disallowed the tax deductions claimed by petitioner resulting from the car racing, on the grounds that it was not an activity entered into for profit, within the meaning of section 183. [1] Respondent here concedes that the amounts of loss claimed by petitioner are correct, if the Court holds that petitioner sustained deductible losses from his car racing. *298 We must therefore decide whether petitioner's car racing activity was a business engaged in for profit within the meaning of the statute. Section 183(c) provides that deductions for expense in connection with an activity will be allowable if such activity is a business within the meaning of section 162 or incurred with respect to the production of income from property within the meaning of section 212(1) or (2). In the context of the present case, this means that it is necessary for us to find that petitioner was engaged in a business with the actual and honest objective of achieving a profit. If so, then his net losses, as shown in his returns, will be allowable; if not, such losses will be allowable only to the extent of the gross income derived from the activity, and the net losses claimed here will not be allowable. Sec. 183(b). Such a determination necessarily depends upon an analysis of the facts in each case. Section 1.183-2(b), Income Tax Regs., contain a list of nine factors to be considered in arriving at a conclusion whether an activity is or is not engaged in for profit. While it is conceded that these factors are not all-inclusive, and while no one factor should *299 be considered to predominate over the others, nevertheless these nine tests provide useful objective criteria for measuring what is in fact a subjective intent. These nine tests, and the significance which they play under the facts of the instant case are as follows: 1. The manner in which the taxpayer carries on the activity. Here the taxpayer did not keep any separately established or accurate books and records of his racing activity. He only had one checking account, all his gross receipts from all sources went into that account, and he paid his race track expenses for the most part out of that account. Such a lack of adequate books and records on the one hand would carry a negative implication as to the serious business intentions of the taxpayer. On the other hand, it must be conceded that respondent has agreed that the expenses claimed in petitioner's return with respect to the racing activity were accurate in amount; respondent only challenges their deductibility as a matter of law. Thus, we do not consider petitioner's lack of books and records with regard to his car racing a fatal negative mark in this case, but we think a serious business operation would have *300 kept records to show races petitioner entered, and what his winnings were in each race, facts which petitioner was unable to produce at trial. 2. The expertise of the taxpayer or his advisers. The record in this case indicates only that petitioner had some prior experience in dirt track car racing after his graduation from high school in the 70's and early 80's. One of his helpers, who testified in this case, also claimed to have had prior experience as a crew member in car racing. Other than this, we find no evidence that petitioner made any detailed study of the pluses and minuses of the possibilities of profit making in car racing. Petitioner simply does not seem to have given this a great deal of weight in his thinking. 3. The time and effort expended by the taxpayer in carrying on the activity. Here, petitioner's principal employment, which presumably was full time, was as the manager of an auto parts store in the central Virginia area. His devotion to the race car activity was after hours, Saturdays, and sometimes Sundays. The regular employment of his unpaid volunteer helpers is not shown, but it appears that theirs also was an after-hours activity. The *301 record does indicate that petitioner and his helpers spent considerable time working on the car and transporting it to meets around Virginia during the racing season at least, but such facts do little to support petitioner's claim that this was a serious activity entered into with a profit-making objective, where he apparently relied for all his help on a small core group of enthusiastic amateurs, with occasional help from other unpaid individuals. 4. Expectation that the assets used in the activity may appreciate in value. Petitioner candidly admitted that considering the hard use and frequent damage which a race car incurs, it was not to be assumed that a race car would appreciate in value over its costs (disregarding depreciation) after a period of substantial use, and the record indicates that such nonappreciation in fact occurred here when petitioner disposed of his race car in 1989. The prospect of appreciation in the race car's value is not a matter in petitioner's favor here. 5. The success of the taxpayer in carrying on other similar or dissimilar activities. There is no record of any similar or dissimilar activities in this case which would be significant. *302 Prior to the present episode, it is true that petitioner engaged in a lower level of racing activity on dirt tracks. The record is silent as to whether these efforts were profitable or unprofitable, and this lends no support to petitioner's position here. 6. The taxpayer's history of income or losses with respect to the activity. The record shows that from the time he acquired the race car in 1985 through 1988, petitioner suffered losses in each year and claimed them for tax purposes. He disposed of his race car and ceased the activity in 1989, and accordingly claimed no losses and reported no income from race car activity in that year. In 1986, 1987, and 1988, which apparently were the years of more or less full racing activity, the net losses decreased, but only modestly. There was still a large excess of expense over income in each of the 3 years, giving no encouragement to the hope that a profitable activity lay in the future. There was apparently no unusual catastrophe or event which contributed to the consistent losses in 1986, 1987, and 1988. It was just a steady history of far more expenditure than there was income. This record gives no support to an objective *303 for profit in the long term. See Bessenyey v. Commissioner, 45 T.C. 261 (1965), affd. 379 F.2d 252 (2d Cir. 1967). 7. The amount of occasional profits, if any, which are earned. There were none here; beginning in 1985, when the car was first acquired, to 1989, when the car was disposed of, there were no net profits. The amount of expense was large compared to the fairly nominal gross income which was received. 8. The financial status of the taxpayer. The net worth of petitioner is not disclosed in this record. He does not appear to have been a man of great wealth, to whom tax deductions would be especially attractive, but he appears to have had a substantial full-time job, paying from $ 40,000 to $ 57,000 a year, and this was the source of the funds which he lavished on his race car. We do not think this factor weighs either for or against petitioner in this situation. 9. Elements of personal pleasure or recreation. It appears to be unquestioned in this record that petitioner found car racing an attractive and rewarding (in the nonfinancial sense) occupation, but this is not to be held against him. As this Court observed: *304 "a business will not be turned into a hobby merely because the owner finds it pleasurable; suffering has never been made a prerequisite to deductibility." Jackson v. Commissioner, 59 T.C. 312, 317 (1972). Petitioner may have enjoyed what he was doing, but that does not count against him; the ultimate question is still whether he had an actual and honest objective of making a profit from car racing. The burden of proof on this ultimate fact is, of course, upon petitioner. Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933); Rule 142(a). As will be seen from the above discussion, some of the nine factors which we have mentioned do not appear significant in this case. Others are to be considered more seriously as indicating that petitioner lacked the true objective of making a profit, as opposed to the personal pleasure which he derived from racing cars. None of the above factors, however, weigh strongly in his favor. On balance, we must conclude that petitioner has failed to carry his necessary burden of proof to establish that his racing car activity in the years 1986 and 1987 was carried on with the actual and honest objective of making a profit, *305 and accordingly this issue must be decided in favor of respondent. Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code as in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.↩