T.C. Memo. 2007-309

UNITED STATES TAX COURT

NORA E. KEATING AND RICHARD L. SHEARER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23856-05.                  Filed October 11, 2007.

<u>Jon J. Jensen</u>, for petitioners.

<u>Melissa J. Hedtke</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

SWIFT, <u>Judge</u>:  Respondent determined deficiencies in petitioners' joint and in petitioner Nora Keating's individual Federal income taxes as follows:

|       | Joint | Nora Keating's |
|-------|-------|----------------|
| Year  | Deficiency | Deficiency |
| 1996  | $7,784 | |
| 1997  | 6,507 | |
| 1998  | 18,181 | |
| 1999  | 16,191 | |
| 2000  | 20,219 | |
| 2001  | | $29,066 |
| 2002  | | 35,815 |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

All references to petitioner in the singular are to petitioner Nora Keating.

The issue for decision is whether petitioner's Arabian horse-breeding activity (horse activity) constituted an activity carried on for profit under section 183.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

At the time of filing the petition, petitioners resided in Williston, North Dakota.

In 1996, petitioner moved to Williston, North Dakota, began work as an emergency room physician in a local hospital, and purchased a home on a 10-acre farm.

Throughout the years in issue, petitioner worked approximately 60 hours a week as a physician--typically two 24-

hour shifts and one 12-hour shift. Petitioner preferred this work schedule because she felt "burned out" from medical school and because it gave her more full days to spend with her six children.

For the years in issue, petitioner's average annual income from her medical practice was $238,134.

Petitioner's husband Richard Shearer was employed as a firefighter-medic in North Dakota and did not participate in any meaningful way in petitioner's horse activity.

Throughout her life, petitioner admired horses. While in high school, petitioner worked part time in a veterinary clinic and was a member of several riding clubs. Petitioner purchased and boarded her first horse when she was 15 years old.

In 1996, when petitioner began her horse activity, petitioner realized a lifelong dream of working with horses.

Petitioner was particularly interested in raising Arabian horses. Petitioner considers Arabian horses the "ballerinas of the horse world".

Prior to 1996, petitioner had no experience in the business of buying, selling, or showing horses. Petitioner did have experience in owning, caring for, and riding horses, and petitioner possessed the knowledge and skill to perform basic veterinary tasks.

In starting up her horse activity, petitioner spoke with several individuals about training and breeding and about veterinary issues relating to horses. In particular, petitioner spoke with an award-winning breeder of Arabian horses, two horse trainers, and a veterinarian. Petitioner consulted these individuals regarding breeding horses, selecting stallions and mares, feed, training methods, artificial insemination of mares, and factors that could result in early termination of pregnancy.

Petitioner also spoke with individuals affiliated with horse breeding and training who had been audited by respondent, who recommended to petitioner that she keep good expense records and that she keep track of receipts.

Aware that, as a physician, her horse activity would be "under the microscope", petitioner consulted a C.P.A. to learn how to keep track of receipts and to maintain records.

Petitioner did not discuss with anyone the economic or business aspects of breeding, training, and showing horses.

The following schedule indicates when petitioner acquired each of her horses, the purchase price, the type of horse, if in the record the purpose for purchasing the horse, and the horse's physical condition.

| Horse | Year Acquired | Purchase Price | Type of Horse | Purpose of Purchase | Physical Condition |
|-------|---------------|----------------|---------------|---------------------|--------------------|
| Santana Sun | 1996 | $1,500 | Gelding | | |
| Benjy Bey | 1996 | 300 | Gelding | | |
| Honey | 1996 | 1,100 | Gelding | Riding | Crippled |
| Michaela | 1996 | 1,500 | Mare | Breeding | |
| Angelette | 1997 | 2,000 | Mare | | |
| Mariah | 1998 | 1,500 | Mare | Breeding | |
| Supreme Design | 1998 | 3,000 | Mare | Breeding | |
| Lady | 1998 | 1,500 | Pony | Riding | |
| Trouble | 1998 | 1,500 | Pony | Riding | |
| Sheer Energy | 1998 | Home-foaled | Gelding | | |
| Khat Ballou | 1999 | Home-foaled | Mare | | |
| Doc Wilder | 2000 | Home-foaled | Gelding | Riding | Crippled |
| Links Fame | 2000 | Home-foaled | Gelding | | |
| River Freedom | 2002 | 800 | Gelding | Riding | Respiratory Disease |
| Sabrinakov | 2002 | 500 | Mare | | |
| Secret Link | 2002 | Home-foaled | Mare | | |
| Rico de Angelo | 2002 | Home-foaled | Gelding | | |
| Tony Montana | 2002 | Home-foaled | Gelding | | |
| Dakota Catalyst | 2002 | 500 | Gelding | | |
| Aw Fames Ovation | 2002 | 5,000 | Gelding* | | |

* At trial we asked the parties to include in their posttrial briefs a schedule detailing purchase, sale, and condition of each of the horses involved in petitioner's horse activity. Neither party produced such a schedule. Information in the schedule here provided is derived from the record. Some of the dates and amounts indicated are not completely clear in the record.

During 1996 through 2002, petitioner sold only two of her horses--each for less than its purchase price.  In 2002, Lady was sold for $750, and Trouble was sold for $750.

Throughout the years in issue, petitioner received and read publications and materials regarding horse breeding and horse training. Several of the publications discussed tax issues relating to horse breeding.

Once petitioner began her horse activity, petitioner retained her emergency room work schedule to allow more time in her horse activity. On days not scheduled to work at the hospital, petitioner spent approximately 7 to 10 hours working in her horse activity.

Petitioner's horse activity involved training and feeding the horses, cleaning horse stalls, riding recreationally, competing in shows, performing basic veterinary work, and a host of other activities. Petitioner received much enjoyment and satisfaction from her horse activity. Petitioner's favorite time of day was working with the horses, and petitioner even found cleaning the stalls to be a "stress reliever".

Ongoing care and training of the horses were performed by petitioner and her family. Before showing, petitioner hired a professional trainer to "finish" training the horses.

Petitioner's daughter often rode in horse shows, and petitioner was extremely proud of her daughter's and her horses' successes in the shows. On four occasions, petitioner's horses participated in national competitive horse shows.

In 2000, petitioner began building a barn to shelter the horses during the breeding months and thereby to improve breeding.

In 2001, petitioner began boarding horses for, and leasing horses to, other individuals and providing horse clinics.

During the years in issue, in an effort to reduce horse activity expenses, petitioner changed types of feed and sought out alternate sources of hay and specials on stud fees.

During 1996 through 2002, petitioner advertised that her horses were for sale by word of mouth, by showing horses at horse shows, by placing advertisements on three Internet Web sites, and by posting notices at a saddle shop.  Petitioner did not advertise any of her horses for sale in any written publications. In none of the years in issue did petitioner advertise the boarding and leasing of horses.

During 1996 through 2000, from two checking accounts petitioner paid both personal and horse activity expenses.

During 2001, from three different checking accounts petitioner paid both personal and horse activity expenses.

In 2002, petitioner opened a checking account in the name of Nora Ellen Keating Stony Creek Arabians and two new personal checking accounts from all three of which petitioner paid both personal and horse activity expenses.

In 2002, proceeds received from the sale of Lady and Trouble were deposited into one of petitioner's personal checking accounts, not into the Nora Ellen Keating Stony Creek Arabians bank account.

Petitioner recorded horse activity expenses on a ledger by category and retained receipts relating to her horse activity in a folder by month of transaction. Petitioner kept records of training, ovulatory cycles, and vaccinations relating to each horse.

Petitioner did not associate her horse activity expenses with individual horses.

During the years in issue, petitioner did not prepare or have prepared a written business plan or financial projections relating to her horse activity.

For 1996 through 2000, petitioners timely filed joint Federal income tax returns, and for 2001 and 2002 petitioner timely filed an individual Federal income tax return.

Petitioners' joint Federal income tax returns for 1996 through 2000 and petitioner's individual Federal income tax returns for 2001 and 2002 included a Schedule F, Profit or Loss From Farming, on which it was indicated that the principal activity was "horses".

On Schedule F of the above respective tax returns the following gross income, expenses, and net losses were reported relating to petitioner's horse activity:

| Year | Gross Income | Expenses | Net Losses |
|------|-------------|----------|------------|
| 1996 | $ 144 | $ 22,227 | $ (22,083) |
| 1997 | 178 | 22,187 | (22,009) |
| 1998 | 335 | 48,289 | (47,954) |
| 1999 | 432 | 44,784 | (44,352) |
| 2000 | 750 | 50,550 | (49,800) |
| 2001 | 1,200 | 84,382 | (83,182) |
| 2002 | 1,418 | 102,550 | (101,132) |
| Total | $4,457 | $374,969 | $(370,512) |

Petitioner's horse activity losses reduced petitioners' reported taxable income and resulted in claimed tax savings in the amount of the tax deficiencies involved herein.

## OPINION

The deductibility under section 162 or section 212 of taxpayer expenses attributable to an activity depends upon whether the activity is carried on for profit. See secs. 162, 183, 212.

Section 183 specifically precludes deductions for expenses relating to an activity not carried on for profit except to the extent allowed by section 183(b). For example, deductions are not allowable under section 162 or section 212 for expenses of an

activity that a taxpayer carries on primarily as a hobby or for recreation.  Sec. 1.183-2(a) Income Tax Regs.  For a taxpayer's expenses of an activity to be deductible under section 162 or section 212, and not subject to the limitations of section 183, the activity must be carried on with an actual and honest profit objective.  E.g., <u>Dreicer v. Commissioner</u>, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983).

The regulations under section 183 provide a nonexclusive list of nine factors to consider in determining whether an activity is carried on for profit, as follows:  (1) The manner in which the activity is carried on; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activity; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved.  See sec. 1.183-2(b), Income Tax Regs.

Neither a single factor, nor the existence of even a majority of the factors, is controlling, but rather an evaluation of all the facts and circumstances is necessary.  <u>Golanty v. Commissioner</u>, 72 T.C. 411, 426-427 (1979), affd. without opinion

647 F.2d 170 (9th Cir. 1981).  Greater weight is given to objective facts than to a taxpayer's mere statement of intent. Dreicer v. Commissioner, supra at 645.

We consider each of these factors in turn.

Manner in Which Petitioner Carried On Her Horse Activity

The regulations under section 183 provide that carrying on an activity in a businesslike manner indicates a profit objective.  Sec. 1.183-2(b)(1), Income Tax Regs.  The regulations explain that businesslike operations typically would involve the maintenance of complete and accurate books and records, the conduct of the activity in a manner similar to profitable businesses of the same nature, and changes to improve operations and profitability.  See id.  Numerous court opinions mention that a businesslike operation often would involve a business plan. See, e.g., Wesinger v. Commissioner, T.C. Memo. 1999-372.

With respect to books and records, we have held that the maintenance of mere lists of and receipts for expenses without any further cost accounting or analysis would not reflect good business practices.  See Wesinger v. Commissioner, supra; Dodge v. Commissioner, T.C. Memo. 1998-89, affd. without published opinion 188 F.3d 507 (6th Cir. 1999); Burger v. Commissioner, T.C. Memo. 1985-523, affd. 809 F.2d 355 (7th Cir. 1987).

The term "businesslike manner" contemplates the use of cost accounting techniques that provide the taxpayer with information

required to make informed business decisions. <u>Burger v. Commissioner</u>, <u>supra</u>. The purpose of maintaining business books and records is more than to "memorialize for tax purposes the existence of the subject transactions" and includes providing a "means of periodically determining profitability and analyzing expenses". <u>Id.</u>; see also <u>Dodge v. Commissioner</u>, <u>supra</u> (minimal records used to prepare tax returns not adequate to support a finding that activity was carried on for profit). The mere ability to substantiate expenses does not establish that the records were kept in a businesslike manner.

In the context of animal-breeding activities, we have indicated that the absence of detailed monthly expense records for each animal may indicate a lack of profit objective. See <u>McKeever v. Commissioner</u>, T.C. Memo. 2000-288; <u>Dodge v. Commissioner</u>, <u>supra</u>.

Petitioner failed to keep track of expenses on a per-horse basis and failed to prepare any financial projections which would have aided her in evaluating the economic performance of her horse activity. The financial records maintained by petitioner appear to have been maintained primarily for tax purposes.

Petitioner emphasizes that she maintained detailed records for each horse relating to vaccinations, training, and ovulatory cycles. The maintenance of these types of records, however, is as consistent with a hobby as with a business. See <u>Golanty v.</u>

Commissioner, supra at 430; Giles v. Commissioner, T.C. Memo. 2006-15; Burger v. Commissioner, supra.

Petitioner contends that her methods of advertising were similar to other horse-breeding operations and evidence her profit objective.  While we recognize that participation in horse shows provides some advertising, see Engdahl v. Commissioner, 72 T.C. 659, 662-663 (1979), we find in this case that petitioner's advertising efforts were minimal.  Where we have found that an animal breeder operated in a businesslike manner, generally the breeder not only participated in shows but engaged in other forms of substantial advertising.  See Engdahl v. Commissioner, supra at 667 (advertised in horse publications); Rinehart v. Commissioner, T.C. Memo. 2002-9 (advertised in horse publications and gave out promotional materials); Routon v. Commissioner, T.C. Memo. 2002-7 (advertised in trade publications and mailed promotional videos); Strickland v. Commissioner, T.C. Memo. 2000-309 (advertised in local newspaper); Davis v. Commissioner, T.C. Memo. 2000-101 (advertised in newspapers and distributed promotional clothing); Phillips v. Commissioner, T.C. Memo. 1997-128 (distributed promotional videos and participated in horse associations for the purpose of advertising); Burrow v. Commissioner, T.C. Memo. 1990-621 (prepared promotional videos and advertised in horse publications).  As we have found, petitioner's advertising and promotion of her horse activity were

limited to word of mouth, participation in shows, placement of advertisements on three Web sites, and posting of notices at a saddle shop. During the years in issue, petitioner did not advertise in any trade magazines, journals, or written publications.

The commingling of personal and activity funds is not indicative of businesslike practices. Burrow v. Commissioner, supra; Ballich v. Commissioner, T.C. Memo. 1978-497. As indicated, petitioner did not have a separate bank account for her horse activity but instead paid horse-related and personal expenses out of several personal accounts.

With regard to changes in operating methods, small improvements over several years may not reflect a businesslike operation. Wesinger v. Commissioner, supra. The various changes to petitioner's horse activity appear to us to have been relatively insignificant.

While construction of barns and other facilities may demonstrate a profit objective, Strickland v. Commissioner, supra; Phillips v. Commissioner, supra, we note that petitioner's primary purpose for constructing the barn was to improve horse breeding, and it is as consistent with a hobby as with a business.

Petitioner's testimony that she had a simple and concise business plan "to raise good quality horses, well-trained horses,

horses that will give * * * [petitioner] a good reputation, horses that will do well in the market" is inadequate for us to conclude that petitioner had an established business plan. See Wesinger v. Commissioner, T.C. Memo. 1999-372; Sanders v. Commissioner, T.C. Memo. 1999-208 (finding similar testimony inadequate).

The fact that petitioner hired a professional trainer to finish training her horses is not particularly helpful to petitioner. A hobby breeder who enters horses in shows to enhance her reputation and to participate in competition also may hire a professional trainer to finish training the horses.

We conclude that petitioner did not operate her horse activity in a businesslike manner. This factor weighs in favor of respondent.

Expertise of Petitioner and Her Advisers

In considering this factor the focus is upon expertise and preparation with regard to the economic aspects of a particular business. See, e.g., Golanty v. Commissioner, 72 T.C. at 432.

While petitioner may have developed an expertise in the breeding and training of horses, her expertise did not extend to the economics thereof. Petitioner testified that she consulted with a successful breeder, several professional trainers, and a veterinarian, but the discussions focused primarily on the

scientific and practical aspects of breeding and training and not on the business aspects thereof.

Petitioner's discussions with a C.P.A. amounted to little more than how to keep track of and to maintain expense receipts for tax purposes.

We conclude that petitioner was not an expert and did not seek out expert advice regarding the economic aspects of carrying on a horse activity for profit. This factor weighs in favor of respondent.

Time and Effort Petitioner Expended in Carrying On the Activity

Section 1.183-2(b)(3), Income Tax Regs., specifies that devotion of much personal time to an activity and withdrawal from another occupation may evidence a profit objective. This is particularly true where the activity does not have substantial personal or recreational aspects. Id.

Petitioner contends that this factor weighs in her favor because she voluntarily opted to work fewer shifts at the hospital to spend more time on her horse activity. However, petitioner's initial reason for working at the hospital only 2 and 1/2 days a week was because she felt "burned out" and wanted to spend more time with her children.

We recognize that feeding and watering horses and cleaning stalls may be unpleasant tasks, but they are involved in caring for horses regardless of whether an activity is pursued as a

hobby or as a business.  <u>Giles v. Commissioner</u>, T.C. Memo. 2006-15; see <u>Sullivan v. Commissioner</u>, T.C. Memo. 1998-367, affd. without opinion 202 F.3d 264 (5th Cir. 1999).

It is evident that petitioner received much satisfaction from raising and training horses.  Since childhood, petitioner has dreamed of owning horses, and petitioner clearly enjoyed riding in and entering horse shows.   While petitioner may have spent a significant amount of time with her horse activity, because the horse activity had significant personal and recreational components, this factor is neutral.

Expectation of Appreciation in Value

No evidence is before us as to the value of petitioner's horses, and it is not possible for us to determine the extent to which petitioner's significant losses from her horse activity someday may be offset by appreciation in value.  See <u>Wesinger v. Commissioner</u>, <u>supra</u>.

This factor weighs in favor of respondent.

Success in Carrying On Other Activity

Petitioner has not engaged in any activity similar to her horse activity.

This factor is neutral.

History of Income or Losses

A history of substantial losses may indicate that an activity is not conducted for profit. See Golanty v. Commissioner, supra at 427; sec. 1.183-2(b)(6), Income Tax Regs. However, if the losses occur during the startup phase of an activity, the losses do not necessarily indicate a lack of profit objective. See Engdahl v. Commissioner, 72 T.C. at 669.

We have found that the startup phase of a horse-breeding activity may be 5 to 10 years. See id.; Davis v. Commissioner, T.C. Memo. 2000-101; Phillips v. Commissioner, T.C. Memo. 1997-128.

Because petitioner began her horse activity in 1996, the losses petitioner incurred during the years in issue may still be considered part of the startup phase. We treat this factor as neutral.

The Amount of Occasional Profits

The amount of occasional profits a taxpayer earns from an activity may show that the taxpayer has a profit objective. Sec. 1.183-2(b)(7), Income Tax Regs. While petitioner realized no profits, we treat this factor as neutral because, as stated, losses are not unreasonable during the startup phase of a horse-breeding activity. See Strickland v. Commissioner, T.C. Memo. 2000-309.

Financial Status

    Substantial income from sources other than an activity may indicate that the activity is not carried on for profit, especially if losses from the activity generate substantial tax benefits.  Sec. 1.183-2(b)(8), Income Tax Regs.

    During the years in issue, petitioner's average annual salary was $238,134.  As a result of the losses in her horse activity, petitioner claimed significant reductions in her taxable income in each year in issue and a total of $133,763 in claimed tax savings over 7 years.

    This factor weighs in favor of respondent.

Elements of Personal Pleasure

    Personal or recreational aspects of an activity may indicate that the activity was not conducted with a profit objective. McKeever v. Commissioner, T.C. Memo. 2000-288; sec. 1.183-2(b)(9), Income Tax Regs.  However, the sole fact that a taxpayer derives pleasure from an activity does not show lack of a profit objective if the activity is, in fact, conducted for profit as evidenced by other factors.  Sec. 1.183-2(b)(9), Income Tax Regs.; see also Jackson v. Commissioner, 59 T.C. 312, 317 (1972) (a business will not be turned into a hobby merely because the owner enjoys the activity).

    In the context of horse breeding, a particularly relevant fact is whether a taxpayer or the taxpayer's family rides the

horses for pleasure or recreation.  See <u>Montagne v. Commissioner</u>, T.C. Memo. 2004-252, affd. 166 Fed. Appx. 265 (8th Cir. 2006); <u>Bunney v. Commissioner</u>, T.C. Memo. 2003-233.

On the facts of this case, the recreational aspects of petitioner's horse activity suggest an activity without a profit objective.

This factor weighs in favor of respondent.

<u>Conclusion</u>

Of the above factors, five weigh in favor of respondent, four are neutral, while none weighs in favor of petitioner.  We hold that petitioner's horse activity during the years in issue was an activity not carried on for profit within the meaning of section 183(c).[1]

This case is decided on the preponderance of the evidence, and is unaffected by section 7491.  See <u>Estate of Bongard v. Commissioner</u>, 124 T.C. 95, 111 (2005).

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.

---

[1] This opinion only applies to the years in issue, and petitioner is not precluded from establishing a for-profit objective in later years.  See <u>Rinehart v. Commissioner</u>, T.C. Memo. 2002-9.