T.C. Memo. 2017-113

UNITED STATES TAX COURT

ALLEN T. STETTNER AND JULIE A. STETTNER, Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 27557-14.                          Filed June 14, 2017.

<u>Frank A. DiPietro</u> and Jonathan M. Hoffmann (student), for petitioners.

<u>Jeremy J. Eggerth</u> and <u>John Schmittdiel</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

NEGA, <u>Judge</u>:  Respondent determined a deficiency in petitioners' 2011

Federal income tax of $12,705 and an accuracy-related penalty under section

6662(a)[1] of $2,541.  The issues for decision are:  (1) whether petitioners' car

_____

[1]Unless otherwise indicated, all section references are to the Internal

(continued...)

**[\*2]** racing activity during 2011 constituted an activity not engaged in for profit within the meaning of section 183, and (2) whether petitioners are liable for an accuracy-related penalty under section 6662(a).

FINDINGS OF FACT

Some of the facts are stipulated and are so found.  The stipulation of facts and the attached exhibits are incorporated herein by this reference.  Petitioners resided in Minnesota when the petition was filed.

In 2006 Allen Stettner formed Al Stettner Racing.  Petitioners reported net losses of $19,991 and $16,641 from Al Stettner Racing on Schedules C, Profit or Loss From Business, for 2006 and 2007, respectively.  Petitioners stopped operating Al Stettner Racing in 2007, and they did not report a car racing activity on Schedules C for 2008-10.  In 2009 petitioners filed a chapter 7 bankruptcy petition that, by their own admission, was attributable in part to Al Stettner Racing's losses.[2]

_____

[1](...continued)
Revenue Code in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All monetary amounts are rounded to the nearest dollar.

[2]Petitioners' bankruptcy was discharged in 2010.

**[*3]**  In 2011 Mr. Stettner was unemployed and withdrew a portion of his section 401(k) plan account to form AJS Motorsports (AJS).  Despite having no formal business education and having incurred substantial losses while operating Al Stettner Racing, Mr. Stettner was confident that he could operate AJS for a profit; he believed that nearly 20 years of racing experience, reading periodicals and online resources, and consulting with drivers who were "regularly successful" established the requisite expertise for operating a profitable racing business.  Mr. Stettner devoted 40-60 hours per week to AJS while unemployed in 2011 and 15-20 hours per week after he became gainfully employed in 2012.

Mr. Stettner did not have a written business plan for AJS, only a mental one, nor did AJS have a separate bank account; rather, he paid AJS' expenses out of petitioners' personal checking account.  Petitioners reported net profits and losses from AJS on Schedules C for 2011-15 as follows:

| Year | Gross income | Total expenses | Net profit (loss) |
|------|------|------|------|
| 2011 | $480 | $63,249 | ($62,769) |
| 2012 | 2,738 | 18,754 | (16,016) |
| 2013 | 8,740 | 4,900 | 3,840 |
| 2014 | 9,246 | 4,608 | 4,638 |
| 2015 | 9,280 | 6,122 | 3,158 |

**[*4]** AJS' gross income comprised race prize money ($300-$3,000 for winning, $40-$75 for participating, and a variable amount dependent on final race position), proceeds from sales of used parts and cars, and sponsorship payments. Mr. Stettner participated in 18-22 races per year and earned roughly $100-$150 per race. Mr. Stettner claimed that AJS received annually and included in gross income roughly $5,000-$6,000 cash from sponsors; however, a review of the record indicates only one sponsor, Lallier Electric, gave cash ($1,200 annually); AJS' other sponsors opted to give a 10% discount for parts purchased at their stores.

AJS paid at least $11,000 and $10,000 of expenses for car parts purchased from Fegers Racing for 2013 and 2014, respectively. Both amounts exceed AJS' total expenses reported on Schedules C for those respective years.[3] Therefore, contrary to AJS' reported net profits on Schedules C for 2013 and 2014, we find that AJS had net losses of at least $2,260 and $754 for 2013 and 2014, respectively.

During 2014 and 2015 Mr. Stettner worked as a mechanic for Kremer Services, LLC (Kremer); he purchased tools in connection with his employment at

---

[3]Petitioners' reported total expenses on Schedules C for 2013 and 2014 of $4,900 and $4,608, respectively.

[*5] Kremer, costs of which petitioners claimed as deductions for unreimbursed employee expenses on Schedules A, Itemized Deductions, of $18,978 and $14,303 for 2014 and 2015, respectively. Mr. Stettner received $18,696 and $36,899 in wages from Kremer for 2014 and 2015, respectively.

On October 14, 2013, petitioners filed Form 5213, Election To Postpone Determination as To Whether the Presumption Applies That an Activity Is Engaged in for Profit. On September 11, 2014, respondent issued petitioners a notice of deficiency for 2011 that (1) disallowed Schedule C expense deductions pursuant to section 183 and (2) determined petitioners were liable for an accuracy-related penalty under section 6662(a). Petitioners timely filed a petition for redetermination of the deficiency and the accuracy-related penalty.

OPINION

I.    Section 183

Section 162(a) allows a taxpayer to deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". In general, however, a taxpayer may not deduct expenses incurred in connection with activities not engaged in for profit, such as activities primarily carried on as sport, as a hobby, or for recreation, to offset taxable income from other sources. Sec. 183(a) and (b); sec. 1.183-2(a), Income Tax Regs. Section

[*6] 183(c) defines an "activity not engaged in for profit" as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212." "An activity is engaged in for profit if the taxpayer has an actual, honest profit objective, even if it is unreasonable or unrealistic." Keating v. Commissioner, 544 F.3d 900, 904 (8th Cir. 2008), aff'g T.C. Memo. 2007-309; see sec. 1.183-2(a), Income Tax Regs. Whether the taxpayer had the requisite profit objective is determined by looking at all the facts and circumstances. Evans v. Commissioner, 908 F.2d 369, 373 (8th Cir. 1990), rev'g T.C. Memo. 1988-468; sec. 1.183-2(a), Income Tax Regs. We give greater weight to objective facts than to a taxpayer's statement of intent. Thomas v. Commissioner, 84 T.C. 1244, 1269 (1985), aff'd, 792 F.2d 1256 (4th Cir. 1986); sec. 1.183-2(a), Income Tax Regs. Evidence from the years after the year in issue is relevant to the extent it creates inferences regarding the taxpayer's requisite profit objective in earlier years. See, e.g., Smith v. Commissioner, T.C. Memo. 1993-140.

Pursuant to section 183(d), an activity is presumed to be engaged in for profit if the activity produces income in excess of deductions for any three of the five consecutive years which end with the taxable year, unless the Commissioner establishes to the contrary. See Wadlow v. Commissioner, 112 T.C. 247, 250

[*7] (1999). Section 183(e) allows a taxpayer to elect to defer the determination of whether the presumption applies until the close of the fourth taxable year following the taxable year in which he first engaged in the activity. The election must be made within three years after the due date of the taxpayer's return (determined without extensions) for the taxable year in which the taxpayer first engages in the activity, but not later than 60 days after the taxpayer received a written notice (if any) from the appropriate Internal Revenue Service official proposing to disallow deductions attributable to an activity not engaged in for profit under section 183. Sec. 12.9(c), Temporary Income Tax Regs., 39 Fed. Reg. 9947 (Mar. 15, 1974); see sec. 183(e)(3).

Mr. Stettner first engaged in AJS in 2011, and therefore petitioners timely filed Form 5213. Petitioners reported income in excess of deductions for AJS on Schedules C for 2013-15, but we find that AJS had net losses of at least $2,260 and $754 for 2013 and 2014, respectively. Accordingly, AJS did not produce gross income in excess of deductions for three of the preceding five taxable years, and therefore petitioners are not entitled to the presumption that AJS was engaged in for profit under section 183(d).[4]

---

[4]Even if we were to accept petitioners' reported net profits on Schedules C for tax years 2013-15 and thereby find that they are entitled to the presumption

(continued...)

**[\*8]** The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer ordinarily bears the burden of proving those determinations erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). If, however, the taxpayer produces credible evidence with respect to any factual issue relevant to ascertaining his Federal income tax liability and meets certain other requirements, the burden of proof shifts from the taxpayer to the Commissioner as to that factual issue. Sec. 7491(a)(1) and (2). Because we decide the section 183 issue on the preponderance of the evidence, the burden of proof is irrelevant. See Blodgett v. Commissioner, 394 F.3d 1030, 1039 (8th Cir. 2005), aff'g T.C. Memo. 2003-212; Knudsen v. Commissioner, 131 T.C. 185, 188-189 (2008).

Section 1.183-2(b), Income Tax Regs., provides a nonexclusive list of factors to consider in evaluating a taxpayer's profit objective, such as: (1) the manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his or her advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may

---

[4](...continued)
under sec. 183(d), there is ample evidence in this case to indicate that petitioners did not engage in AJS for profit, nor did they have an actual, honest profit objective for AJS. See, e.g., Burnett v. Commissioner, T.C. Memo. 1985-620; see also sec. 1.183-2(a), Income Tax Regs.

[*9] appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional profits earned, if any; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation were involved.  No single factor is determinative of the taxpayer's intention to make a profit, and more weight may be given to some factors than others.  Golanty v. Commissioner, 72 T.C. 411, 426 (1979), aff'd without published opinion, 647 F.2d 170 (9th Cir. 1981); see Dunn v. Commissioner, 70 T.C. 715, 720 (1978), aff'd on another issue, 615 F.2d 578 (2d Cir. 1980); sec. 1.183-2(b), Income Tax Regs.  We examine each of these factors in turn.

A.      Manner in Which Petitioner Conducted the Activity

The fact that the taxpayer carries on an activity in a businesslike manner may indicate a profit motive.  Sec. 1.183-2(b)(1), Income Tax Regs.  This determination requires that we consider whether the taxpayer:  (1) maintained complete and accurate books and records; (2) conducted the activity in a manner substantially similar to those of other activities of the same nature that were profitable; (3) changed operating methods, adopted new techniques, or abandoned unprofitable methods in a manner consistent with an intent to improve profitability; and (4) prepared a business plan.  Id.; see Keating v. Commissioner,

**[*10]** T.C. Memo. 2007-309, 94 T.C.M. (CCH) 383, 386 (2007) ("Numerous court opinions mention that a businesslike operation often would involve a business plan.").

Petitioners did not have a written business plan for AJS, only a mental one. AJS did not have its own bank account, and all of its expenses were paid from petitioners' personal checking account. Failure to keep adequate books and records and the lack of a written business plan indicate that petitioners did not conduct AJS in a businesslike manner nor in a manner similar to those of other profitable car racing activities. We find that petitioners failed to conduct AJS in a manner consistent with the operation of a profit-seeking enterprise. Further petitioners did not change operating methods, adopt new techniques, or abandon unprofitable methods that contributed initially to Al Stettner Racing's losses and subsequently to petitioners' 2009 chapter 7 bankruptcy petition. Accordingly, this factor favors respondent.

B.    Expertise of Petitioners or Their Advisers

Preparation for an activity by the extensive study of its accepted business, economic, and scientific practices, or consultation with those who are experts therein, may indicate a profit motive. Sec. 1.183-2(b)(2), Income Tax Regs.; see Engdahl v. Commissioner, 72 T.C. 659, 668 (1979).

**[\*11]** Mr. Stettner's car racing experience of 20-plus years is a valuable way to gain expertise in an activity, but petitioners have not acquired the requisite expertise necessary to conduct a car racing business profitably, as evidenced by both Al Stettner Racing's and AJS' history of losses. Further, petitioners did not introduce any credible evidence that the "regularly successful" drivers that Mr. Stettner consulted made a profit in car racing or were anything other than mere hobbyists, nor did petitioners specify which online resources and periodicals he read for research. Conversely, respondent has not convinced us that petitioners lacked the requisite expertise to conduct a car racing business profitably. Accordingly, this factor is neutral.

C.    Petitioners' Time and Effort Devoted to the Activity

The fact that a taxpayer devotes much of his personal time and effort to carrying on an activity may indicate an intention to derive a profit, particularly if the activity does not have substantial personal or recreational aspects. Sec. 1.183-2(b)(3), Income Tax Regs. Time and effort may be devoted to an activity that has substantial personal and recreational aspects on account of a taxpayer's enjoyment of that activity rather than the taxpayer's intention to derive a profit. See White v. Commissioner, 23 T.C. 90, 94 (1954), aff'd per curiam, 227 F.2d 779 (6th Cir. 1955).

[*12]  Mr. Stettner was unemployed when he started AJS in 2011 and devoted 40-60 hours per week to it.  He became gainfully employed in 2012 and thereafter devoted 15-20 hours per week to AJS.  Although, as we find infra p. 16, Mr. Stettner enjoys racing and derives much pleasure from it, we find that he also spent significant personal time and effort preparing his cars for racing events.  Accordingly, this factor favors petitioners.

D.    Expectation That Assets Used in the Activity May Appreciate

An expectation that assets used in the activity will appreciate in value and therefore may produce an overall economic profit may indicate a profit motive even if the taxpayer derives no operational profit.  Sec. 1.183-2(b)(4), Income Tax Regs.

Petitioners acknowledge that assets used in racing rarely, if ever, appreciate and therefore they had no expectation that their assets would appreciate.  Accordingly, this factor favors respondent.  See, e.g., Emerson v. Commissioner, T.C. Memo. 2000-137, 79 T.C.M. (CCH) 1921, 1924 (2000) (stating that because the taxpayer "had no expectation that the race car would appreciate in value", this factor weighs against the taxpayer); Snoddy v. Commissioner, T.C. Memo. 1991-251, 61 T.C.M. (CCH) 2811, 2813 (1991) (stating that irrespective of the taxpayer's assumption that a race car would not appreciate in value, "[t]he

**[\*13]** prospect of appreciation in the race car's value is not a matter in \* \* \* [the taxpayer's] favor here").

E.      Petitioners' Success in Carrying On Similar or Dissimilar Activities

The fact that a taxpayer engaged in similar activities and converted them from unprofitable to profitable enterprises may indicate that the taxpayer is engaged in the present activity for a profit, even though the activity is presently unprofitable.  Sec. 1.183-2(b)(5), Income Tax Regs.

Petitioners operated Al Stettner Racing, an activity nearly identical to AJS, from 2006 through 2007 and reported net losses of $19,991 and $16,641, respectively.  Accordingly, this factor strongly favors respondent.

F.      Petitioners' History of Income or Loss From the Activity

A taxpayer's history of income or loss with respect to an activity may indicate the presence or absence of a profit motive.  Id. subpara. (6).  A series of losses during the initial stage of an activity does not necessarily indicate a lack of profit motive.  Engdahl v. Commissioner, 72 T.C. at 669; sec. 1.183-2(b)(6), Income Tax Regs.  The goal, however, must be to realize a profit on the entire operation, which presupposes not only future net earnings but also sufficient net earnings to recoup losses incurred in the intervening years.  See Bessenyey v. Commissioner, 45 T.C. 261, 274 (1965), aff'd, 379 F.2d 252 (2d Cir. 1967).

**[\*14]** AJS reported net losses of $62,769 and $16,016 for 2011 and 2012, respectively, and we find AJS had net losses of at least $2,260 and $754 for 2013 and 2014, respectively.[5] We also question the accuracy of AJS' reported net profits for 2015 because we do not find credible Mr. Stettner's testimony that he purchased tools during 2014 and 2015 in connection with his employment at Kremer but did not use those tools in connection with AJS' activities (particularly because he reported more unreimbursed employee expenses than wages from Kremer for 2014). Accordingly, this testimony reflects adversely upon Mr. Stettner's general credibility. Therefore AJS may have paid additional expenses in 2015 that were not reported as Schedule C expenses but rather were reported as unreimbursed employee expenses on Schedule A. We are highly skeptical that petitioners will realize a profit on the entire operation because AJS will not generate sufficient net earnings to recoup prior losses. See id. Accordingly, this factor favors respondent.

G.    Amount of Occasional Profits Earned

The amount of occasional profits earned in relation to the amount of losses incurred, the amount of the investment, and the value of the assets used in the activity may indicate a profit motive. Sec. 1.183-2(b)(7), Income Tax Regs. The

_____

[5]Discussed supra pp. 3-4.

[*15] opportunity to earn substantial profits in a highly speculative venture may ordinarily be sufficient to indicate that the activity is engaged in for profit even though losses or only occasional small profits are actually generated. Id.

Mr. Stettner had the opportunity to earn up to $3,000 per race for winning, but there is no evidence that he ever won a race during 2011-15. Most of AJS' reported profits consist of proceeds from the sale of used parts and cars, Lallier Electric's $1,200 annual sponsorship payment, and minimal race prize money ($100-$150 per race). Petitioners' initial investment in AJS was substantial ($63,249 of total expenses for 2011), and AJS did not operate for a net profit during any year from 2011-14. The reported net profits for 2015 (if accurate) are minimal. Accordingly, this factor favors respondent.

H.    Petitioners' Financial Status

A lack of substantial income from sources other than the activity may indicate that the activity is engaged in for profit. Id. subpara. (8). Substantial income from sources other than the activity (particularly if losses from the activity generate substantial tax benefits) may indicate the activity is not engaged in for profit, especially if personal or recreational elements are involved. Id.; see Golanty v. Commissioner, 72 T.C. at 429.

**[*16]** Petitioner was unemployed when he started AJS in 2011 and withdrew a portion of his section 401(k) plan account to fund his initial investment. Accordingly, this factor favors petitioners.

I.        Elements of Personal Pleasure or Recreation

The presence of personal pleasure or recreational elements in carrying on an activity may indicate the activity is not engaged in for profit. Sec. 1.183-2(b)(9), Income Tax Regs. The fact that the taxpayer derives personal pleasure from engaging in the activity is not by itself determinative that the activity is not engaged in for profit. See id.

There is no question that Mr. Stettner enjoyed and obtained pleasure from his car racing activity, evidenced by his 20-plus years of racing experience. Accordingly, this factor favors respondent.

J.        Conclusion

Of the nine factors listed in section 1.183-2(b), Income Tax Regs., six favor respondent, two favor petitioners, and one is neutral. After considering the factors and the facts and circumstances of this case, we conclude that petitioners did not have an actual, honest profit objective in operating AJS during 2011. Accordingly, petitioners' deductions for expenses paid with respect to AJS are subject to the limitations of section 183.

[*17] II.    Section 6662(a) Penalty

The Commissioner bears the burden of production with respect to a taxpayer's liability for a penalty.  See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  Once the burden of production is met, a taxpayer bears the burden of proof, including the burden of proving reasonable cause for his underpayment of Federal income tax.  See Rule 142(a); Higbee v. Commissioner, 116 T.C. at 446-447.

Section 6662(a) and (b)(2) imposes an accuracy-related penalty on any portion of an underpayment of Federal income tax that is attributable to the taxpayer's "substantial understatement of income tax".[6]  An understatement of Federal income tax is substantial if the amount of the understatement for the taxable year exceeds the greater of 10% of the tax required to be shown on the return or $5,000.  Sec. 6662(d)(1)(A).

Once the Commissioner has met his burden, the taxpayer may avoid a section 6662(a) accuracy-related penalty if he can demonstrate (1) reasonable cause for the underpayment and (2) that he acted in good faith with respect to the underpayment.  Sec. 6664(c)(1).  A determination of reasonable cause and good

---

[6]In this case the deficiency, underpayment of income tax, and understatement of income tax are all computed in the same manner.  See secs. 6211, 6662(d)(2), 6664(a).

[*18] faith "is made on a case-by-case basis, taking into account all pertinent facts and circumstances." Sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioners reported Federal income tax liability of $8,043 for 2011, and respondent determined a deficiency of $12,705. Petitioners' deficiency amount for tax year 2011 exceeds $5,000, which is greater than 10% of the tax required to be shown on petitioners' returns for that year. The understatement of Federal income tax for 2011 is substantial, and respondent has satisfied his burden of producing evidence that the penalty is justified. Petitioners did not address the section 6662(a) penalty at trial, nor have they presented any evidence showing reasonable cause for any portion of the underpayment. Accordingly, we sustain the accuracy-related penalty respondent determined for 2011.

We have considered all the other arguments made by the parties, and to the extent not discussed above, find those arguments to be irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.