T.C. Memo. 2018-116

UNITED STATES TAX COURT

KIMBERLY S. NIX, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4000-16.　　　　　　　　　　　　Filed July 30, 2018.

Michael T. Wells, for petitioner.

Sarah A. Herson and Mark A. Nelson, for respondent.

MEMORANDUM OPINION

LAUBER, Judge:  With respect to petitioner's Federal income tax for 2012-2014, the Internal Revenue Service (IRS or respondent) determined deficiencies and accuracy-related penalties under section 6662(a)[1] in the following amounts:

---

[1]All statutory references are to the Internal Revenue Code (Code) in effect for the tax years at issue, and all Rule references are to the Tax Court Rules of
(continued...)

[*2]

| Year | Deficiency | Penalty |
|------|-----------|---------|
| 2012 | $7,863 | $1,492 |
| 2013 | 12,220 | 2,444 |
| 2014 | 7,163 | 1,432 |

After concessions,[2] this case presents two questions for decision: (1) whether petitioner's activity as a Mary Kay consultant constituted "an activity not engaged in for profit" within the meaning of section 183 and (2) whether petitioner is liable for accuracy-related penalties. We answer both questions in respondent's favor.

## Background

The parties submitted this case for decision without trial under Rule 122. The stipulation of facts, the attached exhibits, and the stipulations of settled issues are incorporated by this reference. Petitioner resided in North Carolina when she filed her petition.

During 2012-2014 petitioner was employed full time as a project manager, earning wages of $94,297, $92,442, and $92,603, respectively. In 2012, having had no prior sales experience of any kind, she decided to participate in the Mary

----

[1](...continued)
Practice and Procedure. We round all monetary amounts to the nearest dollar.

[2]On March 21, 2017, and January 26, 2018, the parties filed stipulations of settled issues setting forth mutual concessions that resolve all other issues in this case.

[*3] Kay network. Mary Kay consultants hope to earn money by selling cosmetic products directly to consumers and by recruiting other sales consultants into the Mary Kay distribution system.

Petitioner was motivated to join the network, at least in part, by the 50% discount she would receive on Mary Kay products that she purchased for her own use. She attended weekly meetings of Mary Kay consultants during which they shared ideas. She did not implement any changes to her Mary Kay operations on the basis of information gleaned from those meetings. She terminated her Mary Kay activity in 2015.

At all times petitioner operated her Mary Kay activity from her home. Her sole Mary-Kay-related assets consisted of perishable beauty products that she kept in a closet. She did not secure professional bookkeeping services for this activity, and she maintained no business records in the form of ledgers, income statements, or statements of cashflows. She made no effort to track the profitability of her Mary Kay activity or evaluate ways to control her losses.

The parties have stipulated that petitioner opened a separate bank account for the Mary Kay activity sometime in 2012. But petitioner cannot identify the date she opened the account, the date she closed the account, the account number, or the amounts of any deposits or withdrawals. During 2014 she deposited Mary

[*4] Kay receipts into her personal account and paid purported Mary Kay expenses from that same account.

Petitioner generated minimal receipts from her Mary Kay activity but reported large losses allegedly attributable to it. For 2012-2014 she timely filed Forms 1040, U.S. Individual Income Tax Return, and attached to each return a Schedule C, Profit or Loss From Business. On these Schedules C she reported gross receipts, cost of goods sold (COGS), and expenses for her Mary Kay activity as follows:

| Item | 2012 | 2013 | 2014 |
|---|---|---|---|
| Gross Receipts | $1,662 | $1,904 | $710 |
| COGS | (1,354) | (1,459) | (949) |
| Returns/Allowances | (58) | (555) | -0- |
| Gross Profit/Loss | 250 | (110) | (239) |
| Expenses: | | | |
| Advertising | 848 | 2,163 | 1,435 |
| Office expense | 723 | 1,070 | 778 |
| Repairs/maintenance | 1,061 | -0- | -0- |
| Supplies | 1,014 | 2,677 | 859 |
| Travel | 11,694 | 5,915 | 9,801 |
| Meals/entertainment | 286 | 1,061 | 60 |
| Utilities | 1,365 | 11,523 | -0- |
| Other | 871 | -0- | 574 |
| Business use of home | 530 | 405 | 446 |

**[*5]**

| | | | |
|---|---|---|---|
| Depreciation | -0- | 48 | 1,243 |
| Car/truck expenses | -0- | 20,294 | 6,918 |
| Legal/professional | -0- | 129 | -0- |
| Total expenses | 18,392 | 45,285 | 22,114 |
| Net profit/loss | (18,142) | (45,395) | (22,353) |

Respondent stipulated that petitioner has substantiated about 25% of these expenses[3] and that, if her Mary Kay activity were deemed a trade or business, the expenses thus substantiated would be deductible Schedule C expenses. But it is obvious that many of the expenses she claimed had a significant personal component. Her reported travel expenses (for example) were incurred in 27 separate trips during 2012-2014. Twenty of these trips were to volleyball tournaments in which her daughter participated; two trips involved vacations with her daughter to Europe and Disney World; and another two trips involved meetings of her college sorority. Her travel expenses alone, aggregating almost $28,000, exceeded by more than 600% the gross receipts she earned from her Mary Kay activity.

The IRS selected petitioner's 2012-2014 returns for examination. As a result of this examination the IRS disallowed all of the COGS and expense deduc-

___

[3]The parties stipulated that, if petitioner is found to have engaged in her Mary Kay activity for profit, she has substantiated Schedule C expenses in the aggregate amounts of $7,280, $7,757, and $6,488 for 2012, 2013, and 2014, respectively.

**[\*6]** tions claimed on her Schedule C (to the extent they exceeded her reported gross receipts) on the ground that her Mary Kay activity was not "an activity engaged in for profit" within the meaning of section 183.  On November 23, 2015, the IRS issued petitioner a timely notice of deficiency setting forth these adjustments and determining accuracy-related penalties.  She timely petitioned this Court for redetermination.

## Discussion

### A.    Burden of Proof

The IRS' determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving them erroneous.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  The taxpayer bears the burden of proving her entitlement to deductions allowed by the Code and of substantiating the amounts of claimed deductions.  INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); sec. 1.6001-1(a), Income Tax Regs.  Petitioner does not contend (and could not plausibly contend) that the burden of proof should shift to respondent under section 7491.  The submission of this case fully stipulated changes neither the burden of proof nor the effect of a failure of proof.  See Rule 122(b); Okerson v. Commissioner, 123 T.C. 258, 263 (2004).

[*7] B.        Section 183 Issue

Section 162(a) allows as a deduction "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." To be entitled to deductions under this section, the taxpayer must show that she engaged in the activity with an "actual and honest objective of making a profit." Hulter v. Commissioner, 91 T.C. 371, 392 (1988) (quoting Ronnen v. Commissioner, 90 T.C. 74, 91 (1988)); see also Magassy v. Commissioner, 140 F. App'x 450, 455 (4th Cir. 2005), aff'g T.C. Memo. 2004-4; Vest v. Commissioner, T.C. Memo. 2016-187, 112 T.C.M. (CCH) 410, 413.  If an activity is not engaged in for profit, no deduction attributable to it is allowed except to the extent of gross income derived therefrom (unless such deductions would be allowable even if the activity were not engaged in for profit).  Sec. 183(b).  Losses are not allowable for an activity that a taxpayer carries on primarily for sport, as a hobby, or for recreation.  Sec. 1.183-2(a), Income Tax Regs.

Petitioner bears the burden of proving that she conducted her activity as a Mary Kay consultant with the principal objective of making a profit.  See Giles v. Commissioner, T.C. Memo. 2005-28, 89 T.C.M. (CCH) 770, 775.  Although a reasonable expectation of profit is not required, the taxpayer must conduct the activity with the dominant hope and good-faith intention of earning positive income.

[*8] Hulter, 91 T.C. at 393; sec. 1.183-2(a), Income Tax Regs.  We determine whether the taxpayer has the requisite profit motive on the basis of all surrounding facts and circumstances.  Thomas v. Commissioner, 792 F.2d 1256, 1260 (4th Cir. 1986), aff'g 84 T.C. 1244 (1985); Taube v. Commissioner, 88 T.C. 464, 480 (1987); Golanty v. Commissioner, 72 T.C. 411, 426 (1979), aff'd without published opinion, 647 F.2d 170 (9th Cir. 1981); sec. 1.183-2(b), Income Tax Regs.  In making this determination, we accord greater weight to objective facts than to the taxpayer's subjective statement of intent.  Faulconer v. Commissioner, 748 F.2d 890, 894 (4th Cir. 1984), rev'g T.C. Memo. 1983-165; Keanini v. Commissioner, 94 T.C. 41, 46 (1990); sec. 1.183-2(a), Income Tax Regs.

Section 1.183-2(b), Income Tax Regs., sets forth a nonexclusive list of nine factors relevant in ascertaining whether a taxpayer conducts an activity with the intent to earn a profit.  The factors listed are:  (1) the manner in which the taxpayer conducts the activity; (2) the expertise of the taxpayer or her advisers; (3) the time and effort spent by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional profits, if

**[\*9]** any; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation. Ibid.

No single factor or group of factors is controlling, nor is it necessary that a majority of factors point to one outcome. See Keating v. Commissioner, 544 F.3d 900, 904 (8th Cir. 2008), aff'g T.C. Memo. 2007-309; Hendricks v. Commissioner, 32 F.3d 94, 98 (4th Cir. 1994), aff'g T.C. Memo. 1993-396; Engdahl v. Commissioner, 72 T.C. 659, 666 (1979); sec. 1.183-2(b), Income Tax Regs. Certain factors may be accorded more weight in a particular case because they have greater salience or persuasive value as applied to its facts. See Crile v. Commissioner, T.C. Memo. 2014-202, 108 T.C.M. (CCH) 372, 379; Green v. Commissioner, T.C. Memo. 1989-436, 57 T.C.M. (CCH) 1333, 1343 (noting that all nine factors do not necessarily apply in every case).

None of the nine factors weighs in favor of petitioner's contention that she engaged in the Mary Kay activity with the dominant hope and good-faith intention of earning a profit. See Hulter, 91 T.C. at 393. Several factors weigh against her quite heavily. For sake of completeness we will briefly discuss each factor.

- Manner in which the activity is conducted: Conducting an activity in a businesslike manner may show that the taxpayer intends to earn a profit from it. Sec. 1.183-2(b)(1), Income Tax Regs. Facts evidencing a businesslike manner

**[\*10]** may include the taxpayer's maintenance of complete and accurate books and records; the taxpayer's conduct of the activity in a manner resembling that in which successful practitioners conduct similar business activities; and the taxpayer's change of operating procedures, adoption of new techniques, or abandonment of unprofitable activities in a manner consistent with a desire to improve profitability. Giles, 89 T.C.M. (CCH) at 776; sec. 1.183-2(b)(1), Income Tax Regs. "Perhaps the most important indication of whether or not an activity is being performed in a businesslike manner is whether or not the taxpayer implements some method for controlling losses." Dodge v. Comissioner, T.C. Memo. 1998-89, 75 T.C.M. (CCH) 1914, 1917, aff'd without published opinion, 188 F.3d 507 (6th Cir. 1999).

Petitioner did not conduct her Mary Kay activity in a businesslike manner. She did not have a discernible business plan, written or otherwise. She did not create or keep a balance sheet, ledger, or statements of cashflows. Although she sustained significant losses annually, she took no apparent steps to control these losses during the tax years at issue.

Petitioner opened a second bank account, but she produced no documentation to show that she actually used that account in conducting her Mary Kay activity. She acknowledges that, at least during 2014, she deposited Mary Kay receipts

**[\*11]** into her personal account and paid purported Mary Kay expenses from that same account. This behavior is not characteristic of a bona fide business. See Stettner v. Commissioner, T.C. Memo. 2017-113, 113 T.C.M. (CCH) 1503, 1505 (finding that paying expenses from a personal checking account and failure to keep books, records, and a business plan were indicia that the taxpayer did not conduct the activity in a businesslike manner). This first factor favors respondent.

• Expertise of the taxpayer or advisers: A taxpayer's preparation for an activity "by extensive study of its accepted business, economic, and scientific practices" may indicate a profit motive. Sec. 1.183-2(b)(2), Income Tax Regs. Petitioner had no expertise in cosmetics or in sales activity generally. She did not seek the assistance of a bookkeeper or other professional. Although she socialized with other Mary Kay consultants, there is no evidence that she modified or improved her operations on the basis of these meetings. Cf. Annuzzi v. Commissioner, T.C. Memo. 2014-233, 108 T.C.M. (CCH) 533, 537 (finding that the taxpayer's changing operating procedures to increase profitability indicated a profit objective). This second factor favors respondent.

• Time and effort spent: Petitioner had a full-time job throughout 2012-2014, and there is no documentary evidence to establish how much time she actually devoted to her Mary Kay activity. She contends that she spent substantial

[*12] time selecting inventory, making sales calls, and attempting to recruit friends to enlist as Mary Kay consultants. But there is no documentary evidence to establish what she actually did or how many hours these activities consumed.

Petitioner has established that she devoted many hours to travel during 2012-2014. But there is no evidence to establish a strong link between this travel and her alleged business. To the contrary, at least 24 of her trips involved travel to her daughter's volleyball tournaments, vacations to Disney World and Europe, and reunions with her sorority sisters. Even if she could plausibly characterize these excursions as "marketing trips," the travel had obvious personal and recreational aspects. That in turn suggests the absence of a true profit motive. See sec. 1.183-2(b)(9), Income Tax Regs. The third factor favors respondent.

• Expectation that assets will appreciate: Petitioner had no Mary-Kay-related assets apart from her inventory of cosmetic products. These were perishable products that she stored in a home closet. These assets were far more likely to depreciate than to appreciate in value. This fourth factor favors respondent.

• Taxpayer's success in other activities: When she joined the Mary Kay network, petitioner had (as far as the record shows) no commercial experience apart from her salaried position as a project manager. That job had no relationship to or synergy with her proposed Mary Kay activity. She had no history of turning

[*13] unprofitable enterprises into profitable ones. This track record does not suggest that she would likely convert her reported 2012-2014 losses into future profits. See sec. 1.183-2(b)(5), Income Tax Regs. This factor favors respondent.

• History of losses and occasional profits: For the tax years at issue petitioner reported net losses for her Mary Kay activity of $18,142, $45,395, and $22,354. Far from showing a net profit, she did not even show a gross profit (i.e., gross receipts less COGS and returned inventory). For the three-year period, her overall gross profit was negative $99, suggesting that she sold her inventory near or below cost. This does not suggest a strong profit motive.

Losses during a startup period do not necessarily negate a profit motive. See sec. 1.183-2(b)(6), Income Tax Regs. But petitioner's reported losses were largely generated by outsized expenses for travel, meals, and entertainment. Nothing in the record suggests that these expenditures helped jump-start her Mary Kay activity or were designed to generate future revenues. A Mary Kay consultancy, moreover, is not the type of "highly speculative venture" in which losses can be rationalized by the possibility of large ultimate gains. See sec. 1.183-2(b)(7), Income Tax Regs. The sixth and seventh factors thus favor respondent.

• Taxpayer's financial status: "Substantial income from sources other than the activity (particularly if the losses from the activity generate substantial tax

**[\*14]** benefits) may indicate that the activity is not engaged in for profit." Sec. 1.183-2(b)(8), Income Tax Regs. By joining the Mary Kay network, petitioner sought to claim tax deductions for day-to-day living expenses--travel to her daughter's volleyball tournaments, vacations, household utilities, and vehicle costs--that would otherwise be nondeductible. See sec. 262(a) (denying deductions for "personal, living, or family expenses"). Although petitioner's salary was fairly modest, she had income to offset, and she offset it by converting into Schedule C expenses nondeductible living costs that she would have incurred regardless of her Mary Kay activity. The tax benefits she thus sought to derive suggest the absence of a true profit motive. See sec. 1.183-2(b)(8), Income Tax Regs.

• Elements of personal pleasure or recreation: "The presence of personal motives in carrying on of an activity may indicate that the activity is not engaged in for profit, especially where there are recreational or personal elements involved." Sec. 1.183-2(b)(9), Income Tax Regs. There are neighborly and social aspects to a Mary Kay consultancy that make it more pleasurable than (say) digging trenches. Petitioner admitted that she was attracted to the network by the 50% discount she would get when purchasing Mary Kay products for her own use. She undoubtedly derived recreation and personal pleasure from 24 alleged business

[*15] trips during which she attended reunions with her sorority sisters, accompanied her daughter to volleyball tournaments, and vacationed in Disney World and Europe. This last factor thus favors respondent.

Petitioner's argument, in essence, is that she engaged in a business for three years, lost money every year, and decided to quit after concluding that the business would never be profitable. But the sequence of events makes this narrative suspect: Petitioner terminated her Mary Kay activity shortly after receiving the IRS notice of deficiency in this case, which suggested that the jig might well be up. Evaluating the facts overall, we conclude that petitioner joined the Mary Kay network, not with an "actual and honest objective of making a profit," but rather to shelter her taxable wage income by claiming losses derived from otherwise non-deductible living costs. See Magassy, 140 F. App'x at 455; Hulter, 91 T.C. at 393.

In sum, we sustain respondent's determination that petitioner's Mary Kay activity was an activity "not engaged in for profit." See sec. 183(a). Petitioner is accordingly entitled to no deductions for her Mary Kay activity in excess of "the gross income derived from such activity," sec. 183(b)(2), unless such deductions "would be allowable * * * without regard to whether or not such activity * * * [was] engaged in for profit," sec. 183(b)(1).

[*16] C.    Accuracy-Related Penalties

The Code imposes a 20% penalty upon the portion of any underpayment of tax attributable to (among other things) "[n]egligence" or any "substantial understatement of income tax." Sec. 6662(a) and (b)(1) and (2). "Negligence" includes "any failure to make a reasonable attempt to comply" with the internal revenue laws. Sec. 6662(c). "Negligence" also includes any failure to keep adequate books and records or to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs.; see Olive v. Commissioner, 139 T.C. 19, 43 (2012), aff'd, 792 F.3d 1146 (9th Cir. 2015). An understatement of income tax is "substantial" if it exceeds the greater of $5,000 or 10% of the tax required to be shown on the return. See sec. 6662(d)(1)(A).

Under section 7491(c) the Commissioner bears the burden of production with respect to the liability of any individual for any penalty. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Respondent has satisfied his burden of production as to negligence by showing that petitioner failed to keep adequate books and records and lacked a genuine profit motive for her Mary Kay activity. See sec. 1.6662-3(b)(1), Income Tax Regs.

In Graev v. Commissioner, 149 T.C. __ (Dec. 20, 2017), supplementing and overruling in part 147 T.C. 460 (2016), we held that respondent's burden of pro-

[*17] duction under section 7491(c) also includes establishing compliance with section 6751(b), which requires that penalties be "personally approved (in writing) by the immediate supervisor of the individual making such determination." See Chai v. Commissioner, 851 F.3d 190, 221 (2d Cir. 2017), aff'g in part, rev'g in part T.C. Memo. 2015-42. The record includes a copy of a Civil Penalty Approval Form, approving imposition of accuracy-related penalties against petitioner for tax years 2012, 2013, and 2014, which was executed by the immediate supervisor of the revenue agent who examined petitioner's returns. We accordingly conclude that respondent has met his burden of production for these penalties.

Section 6664(c)(1) provides an exception to the imposition of the accuracy-related penalty to the extent that the taxpayer establishes that there was reasonable cause for, and that she acted in good faith with respect to, the underpayment. The decision as to whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. See sec. 1.6664-4(b)(1), Income Tax Regs. Circumstances that may signal reasonable cause and good faith "include an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer." Ibid.

**[*18]** Petitioner has failed to establish that she made a good-faith effort to determine her correct Federal income tax liability. She failed to keep books and records of her Mary Kay activity. None of the factors enumerated in the regulations supports her claim of a genuine profit motive. Even if she were thought to have a profit motive, she has stipulated that less than 25% of the expenses she reported would actually be deductible. The deductions she claimed for travel to her daughter's volleyball tournaments, Europe, and Disney World would have difficulty passing the straight-face test.

We accordingly conclude that the underpayments in question (as herein redetermined) are attributable to negligence for which reasonable cause has not been shown. Alternatively, in the event the Rule 155 computations show that the various understatements of income tax exceed the greater of $5,000 or 10% of the amounts required to be shown on petitioner's 2012-2014 returns, we conclude that those underpayments are attributable to substantial understatements of income tax for which reasonable cause has not been shown.

To reflect the foregoing and the parties' mutual concessions,

Decision will be entered

under Rule 155.